**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **US MEDICAL NETWORKS LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civ. Action No. 3:19-cv-01848-N** |
| | § | |
| **BIOFIRE DIAGNOSTICS LLC,** | § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF US MEDICAL NETWORKS LLC'S MOTION FOR SANCTIONS AND BRIEF IN SUPPORT THEREOF**

---

Julie Pettit
State Bar No. 24065971
JPettit@PettitFirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151

Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com
Sara Hollan Chelette
State Bar No. 24046091
schelette@lynnllp.com
Yaman Desai
Texas Bar No. 24101695
ydesai@lynnllp.com
**LYNN PINKER HURST**
**& SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800

**ATTORNEYS FOR PLAINTIFF**
**US MEDICAL NETWORKS, LLC**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. SUMMARY ..... 2

III. RELEVANT FACTUAL BACKGROUND ..... 4

A. Curt Caldwell Reaches Out to USMN. ..... 4

B. BioFire Obtains and Files a False Declaration of Curt Caldwell and a Misleading Certificate of Conference. ..... 6

C. A New Third-Party Declaration further undermines Caldwell's statements. ..... 7

D. BioFire Signs a Misleading Certificate of Conference. ..... 8

IV. ARGUMENTS AND AUTHORITIES ..... 9

A. Legal Standard. ..... 9

B. BioFire Submitted the False Caldwell Declaration Without Reasonable Inquiry. ..... 10

C. Even After Presented With Evidence Contradicting the Caldwell Declaration, BioFire Refused to Withdraw It's Motion. ..... 12

D. Requested Relief. ..... 13

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases**

*Brooks v. United Dev. Funding III, L.P.*, No. 4:20-cv-00150-O, 2020 WL 6132226 (N.D. Tex. May 27, 2020) ........ 9

*Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989) ........ 9

*Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564 (5th Cir. 2006) ........ 12

*Worrell v. Houston CAN! Academy*, 287 F. App'x 320 (5th Cir. 2008) ........ 9

*Worrell*, 287 F. App'x at 325 ........ 11

**Rules**

FED. R. CIV. P. 11(b) ........ 9

FED. R. CIV. P. 11(c)(1) ........ 9

Plaintiff US Medical Networks LLC ("USMN") submits its Motion for Sanctions (the "Motion") pursuant to Federal Rule of Civil Procedure 11 because Defendant BioFire Diagnostics LLC ("BioFire") made false statements to the Court in its own Motion for Sanctions (Dkt. No. 171, "BioFire's Motion") and repeatedly refused to withdraw its motion even after USMN's counsel provided BioFire's counsel with documents, notes, verbal assurances and declarations demonstrating that BioFire cannot have a good faith basis for its allegations.

## I. INTRODUCTION

BioFire's Motion is largely based on the declaration[1]of Curt Calwell, a former BioFire executive who was terminated by BioFire and is one of the most critical witnesses in this matter. His declaration is filled with statements that are demonstrably false. BioFire's counsel was provided with documentary evidence including counsel's contemporaneous notes from their call with Mr. Caldwell, that, at a minimum, would force a reasonable attorney to question the veracity of the declaration and withdraw any motion for sanctions based on same. Further, BioFire not only failed to satisfy its meet-and-confer obligations imposed by the Court's local rules, but misled the Court in its Certificate of Conference, implying that it did somehow satisfy such obligations.

Accordingly, BioFire violated Rule 11(b) when it made false and misleading statements to the Court. BioFire then doubled down on its sanctionable conduct when it refused to withdraw or otherwise correct its false statements after USMN's counsel (1) repeatedly gave BioFire's counsel an opportunity to correct the violation, (2) provided BioFire's counsel with documents and contemporaneous notes demonstrating that it cannot have a good faith basis for its allegations, (3) outlined in a telephone call with BioFire's counsel how the statements contained in its motion were false and misleading, and (4) provided declarations from both co-lead counsel for USMN that

[1] *See* Dkt. No. 172, Ex. C (Caldwell Decl.).

contradicted those statements. Further, USMN has recently obtained and produced a declaration from Rochelle Glassman, a non-party witness, whose statements completely undermine BioFire's position and further demonstrate Mr. Caldwell's declaration in support of BioFire's motion is false.

The Court will recall that this is not BioFire's first time to break the rules. On January 7, 2020, the Court ordered BioFire to pay USMN's costs resulting from BioFire's discovery misconduct. Further, the Court ordered BioFire to *re-produce* its corporate representatives *at the courthouse* for another deposition—requiring that it be supervised by the Court. *See* Dkt. No. 42. ("The Court further ORDERS that the depositions will take place *in the jury room of Judge Ada Brown's chambers*.") (emphasis added). BioFire apparently remains undeterred. Here, BioFire is not only again wasting the Court's and the Parties' time and resources, but has gone further by misleading the Court. As such, BioFire's Motion should be struck, USMN should be compensated for its fees incurred in dealing with this issue, and BioFire's counsel, including Mr. Aaron Charfoos, should be sanctioned by the Court for (again) refusing to play by the rules.

## II. SUMMARY

The gist of BioFire's Motion is that USMN engaged in sanctionable conduct by essentially presenting a false proposed declaration to Mr. Caldwell after he had offered to sign the declaration that had been meticulously worded exactly as Mr. Caldwell stated. Mr. Caldwell is an individual who was recently fired by BioFire (after being deposed by USMN in this case). On or about October 27, 2020, Mr. Caldwell, without any prompting by USMN, sent repeated voicemails and texts to USMN's principal, Terry McBride. Mr. Caldwell subsequently made statements to USMN to the effect that BioFire, through its counsel, influenced his deposition testimony and directly contradicted BioFire's defenses in this case. In complying with its discovery obligations, USMN soon informed BioFire that Mr. Caldwell contacted USMN representatives and USMN voluntarily

produced the texts and voicemails from Mr. Caldwell, as well as the draft declaration presented to Mr. Caldwell.

BioFire alleges that USMN's counsel misled Mr. Caldwell and pressed him for privileged information. Yet BioFire made no meaningful attempt to investigate the accuracy of Mr. Caldwell's statements. Moreover, as discussed herein, BioFire filed its Motion with evidence that directly contradicts Mr. Caldwell's own statements. And BioFire continues to pursue its Motion despite being provided with notes taken by USMN's counsel and two declarations signed by its attorneys that contradict Mr. Caldwell's declaration. The notes were taken contemporaneously with USMN's meeting with Mr. Caldwell and distributed to USMN representatives soon after that meeting. At a minimum, the contemporaneous notes of USMN's counsel clearly raise doubt about the veracity of what BioFire now claims to be sanctionable conduct.[2] Because BioFire refuses to further inspect the veracity of the statements by, e.g., a second deposition of Mr. Caldwell, it remains, at best, willfully ignorant of the truth. Most importantly, it does not have a good faith basis for its Motion as required by Rule 11(b).

BioFire further misled the Court in its certificate of conference. Mr. Charfoos states that "pursuant to Rule 7.1(b)" he properly conferred with USMN's counsel on the substance of BioFire's Motion. In reality, Mr. Charfoos never *mentioned* filing a Motion for Sanctions to USMN's counsel. This is additional evidence of BioFire's less-than-candid conduct before the Court and should not be ignored.

[2] Notably, USMN invited BioFire to also produce any contemporaneous notes or similar evidence, but to date, BioFire has refused to do so. This should not be lost on the Court.

## III. RELEVANT FACTUAL BACKGROUND

### A. Curt Caldwell Reaches Out to USMN.

In late October 2020, Mr. Caldwell contacted USMN's Terry McBride on several occasions. *See* Ex. 1 at ¶¶ 2-3, APP 4-5. After numerous voicemails, Mr. McBride agreed to speak with Mr. Caldwell, at which time Mr. Caldwell inquired about a separate business opportunity and repeatedly apologized for BioFire's treatment of USMN. *See id.* at ¶ 4, APP 5-6.

Following these conversations, Mr. Caldwell agreed to speak with USMN's counsel, Michael Hurst and Julie Pettit regarding USMN's dispute with BioFire. *See* Ex. 2 at ¶ 2, APP 11. When they first spoke on November 3, 2020, Mr. Hurst asked Mr. Caldwell if any agreements with BioFire prohibited him from talking to USMN, and Mr. Caldwell assured Mr. Hurst there were no such agreements. Mr. Hurst also instructed Mr. Caldwell not to discuss privileged information. *See* Ex. 3 at ¶ 3(c), APP 61. At no point during the conversation did Mr. Caldwell discuss communications with BioFire's counsel, and at no point did Mr. Hurst or Ms. Pettit believe they were receiving information that was privileged. *See id.* ¶ 3(d), APP 61.

Mr. Caldwell provided information regarding BioFire's relationship with McKesson, including how the relationship ended. *See* APP 18 (Ex. A to Pettit Decl.). Mr. Caldwell also commented on his reluctance to pursue a BioFire agreement with Hansa Medical Groupe, a customer USMN had entered into an agreement with shortly before BioFire terminated its contract with USMN because he did not feel right about it and told senior BioFire executives same. *Id*. Additionally, Mr. Caldwell vouched for the value USMN brought to BioFire. *Id.* These statements are entirely inconsistent with Mr. Caldwell's deposition.

During the phone call, Ms. Pettit took detailed notes of the conversation. *See* APP 18 (Ex. A to Pettit Decl.). At the end of the call, Mr. Caldwell stated that he was willing to sign a declaration attesting to the information he was providing to USMN's counsel. *See* Ex. 2 at ¶ 3(i),

APP 13. Ms. Pettit said she would draft a declaration based on her notes and in his own words, and Mr. Caldwell agreed to a follow-up phone call to go over the declaration. *See id.*

On a subsequent phone call on November 5th, Ms. Pettit read the draft declaration to Mr. Caldwell line by line. *See* Ex. 2 at ¶ 5, APP 13. She explained that USMN wanted to make sure the declaration was accurate and in Mr. Caldwell's own words. *See id*. After each sentence, Ms. Pettit stopped to ask Mr. Caldwell if he had any revisions. *See id*. And Mr. Caldwell did have several revisions and changes, which were incorporated. *See id.* At the end of the call, Ms. Pettit again verified that the information in the draft declaration was accurate. *See id.* at ¶ 6. Mr. Caldwell confirmed that the draft declaration was accurate and stated that he would sign it the same day. *See id.*, APP 14.

After the call, Ms. Pettit provided the draft declaration to Mr. Caldwell, asking Mr. Caldwell to "[p]lease review it again and make sure everything is accurate."

**Julie Pettit** <jpettit@pettitfirm.com> Thu, Nov 5, 2020 at 1:10 PM
To: curt@medwatersystems.com
Cc: "Michael K. Hurst" <MHurst@lynnllp.com>

Mr. Caldwell,

It was good to speak with you again today. Attached is the declaration we just went over by phone. Please review it again and make sure everything is accurate. If you have any changes, please let me know. If everything is accurate, please sign and return to me.

Thank you.

Best Regards,

Julie Pettit

APP 33 (Ex. B to Pettit Decl.) (emphasis added). The same day, Mr. Hurst similarly told Mr. Caldwell, "I believe [the draft declaration] tracks your words." *See* APP 101 (Ex. D to Hurst Decl.). Ultimately, Mr. Caldwell declined to sign the declaration, informing USMN's counsel that he did not "want to be involved" with BioFire and "wanted to move on." *See id.* at APP 103. Tellingly, Mr. Caldwell never indicated to USMN's counsel that any of the information contained in the draft declaration was inaccurate. *See id.*

After Mr. Caldwell declined to sign the draft declaration, USMN filed its Motion for Leave to Depose Mr. Caldwell. (Dkt No. 165). USMN also produced to BioFire its communications with Mr. Caldwell, including those of USMN's counsel.

**B. BioFire Obtains and Files a False Declaration of Curt Caldwell and a Misleading Certificate of Conference.**

In response to USMN's Motion for Leave, and without conferring with USMN, BioFire filed its Motion for Sanctions (Dkt. No. 171) relying, in large part, on the Caldwell Declaration, which directly contradicts much of the information Mr. Caldwell provided to USMN's counsel. *See* Dkt. No. 172 at 185–88. For example, Mr. Caldwell told USMN's counsel that the split between BioFire and McKesson was contentious. *See* APP 18 (Ex. A to Pettit Decl.). However, the Caldwell Declaration states the opposite. *See* Caldwell Decl. ¶ 9.

In addition to these contradictions, the Caldwell Declaration contains numerous false statements, including:

> I explained [to USMN's counsel] that some of the conversations, including relating to McKesson, the termination of USMN and the decision not to speak with Hansa, were discussions that involved BioFire's counsel Meredith Krannich and I said so; (*Id.* ¶ 5)
>
> At no point did either Ms. Pettit or Mr. Hurst ask me not to review [sic] attorney client communications; (*Id.*)
>
> [A]t no point had Ms. Pettit or Mr. Hurst ever told me that they were going to prepare a declaration or would ask me to sign one. (*Id.* ¶ 6).

In addition to the false statements contained in the Caldwell Declaration, BioFire's Motion states USMN "knew that Mr. Caldwell refused to sign its self-serving declaration, saying the declaration 'was generally not true and did not reflect what we had discussed.'" (Dkt. No. 171 at 14 (quoting Caldwell Decl. ¶ 8)). That, by itself, is inconsistent with Mr. Caldwell's texts to counsel for USMN:

Tuesday 10:00 AM

Curt Salt Lake City

When I reached out to Terry it was to discuss a business opportunity that I thought would be good for many people. I thought Terry was interested in the opportunity. It seems to me like he just wanted me to spend time discussing BioFire. I have already answered these questions in my first deposition. I don't want to be involved with them. I wanted to move on, not spend more time speaking about BioFire.

(*See* Dkt. No. 172 at 191). Here, Mr. Caldwell tells USMN counsel that he wanted to "move on"—not that the declaration was inaccurate. He did the opposite.

### C. A New Third-Party Declaration further undermines Caldwell's statements.

Three weeks after signing the declaration filed with this Court, Mr. Caldwell was once again discussing the litigation. This time, on December 23, 2020, he sought to help a third party by having the third party join USMN in its litigation—***against BioFire***. USMN has recently obtained a declaration from Rochelle Glassman, who is the CEO of a third-party company who, similar to USMN, sold BioFire instruments along with ancillary services. *See* Ex. 6 at ¶¶ 5-7, APP 116-17. Indeed, documents obtained from BioFire in this litigation indicate

*See* Ex. 7, APP 123.

In any event, and as explained by Ms. Glassman, she received a call in November of 2019 from BioFire's Senior Vice President of Sales and Marketing and BioFire's Vice President of Legal Affairs to inform her that her company's partnership with BioFire was being terminated ***because of this litigation with USMN***. *See* Ex. 6 at ¶ 12(a), APP 118.

Further, after being fired himself, on December 23, 2020, Mr. Caldwell told Ms. Glassman to contact Terry McBride because her company had the same case as USMN's and that maybe they could "join forces." *See* Ex. 6 at ¶ 12(b), APP 118. This new information, of course, directly

contradicts Mr. Caldwell's declaration attached to BioFire's Motion that merely reiterates the "party line" that BioFire terminated its agreement with USMN because of overdue invoices.

Finally, Ms. Glassman's declaration shows that (a) Mr. Caldwell thought that BioFire was dishonest (Ex. 6 at ¶ 19, APP 121), (b) that Mr. Caldwell thought that Ms. Glassman's company and USMN were "synergistic" in that they were both wronged by BioFire (Ex. 6 at ¶ 20, APP 121), and (c) Mr. Caldwell actually referred Mr. Glassman to USMN to explore possible litigation against BioFire (Ex. 6 at ¶ 21, APP 121-22).

### D. BioFire Signs a Misleading Certificate of Conference.

BioFire's Motion contains the following Certificate of Conference:

> **CERTIFICATE OF CONFERENCE**
>
> Pursuant to Local Rule 7.1(b), I hereby certify that, on November 17, 2020, I contacted counsel for USMN seeking to confer with them regarding the substance of their communications with Mr. Caldwell. Among other things, I specifically indicated that I sought confirmation from USMN that Mr. Caldwell was instructed not to reveal attorney-client privileged communications, and that Mr. Caldwell did not, in fact, do so. Counsel for USMN failed to respond in any way, and instead filed its Motion for Leave to Depose Curt Caldwell.
>
> */s/ Aaron Charfoos*
> Aaron D. Charfoos

Yet counsel for BioFire never once—in writing or by phone—mentioned a Motion for Sanctions. As such, Mr. Charfoos' Certificate of Conference misleads the Court that BioFire somehow complied with Local Rule 7.1(b). In truth, Mr. Charfoos ***never mentioned a motion for sanctions***.

After BioFire filed its Motion for Sanctions, USMN's counsel requested a conference with BioFire's counsel to discuss these false statements and the Certificate of Conference. On that December 15th conference call, USMN's counsel emphasized the falsity of Mr. Caldwell's

statements and the fact that BioFire had never conferred with USMN. Specifically, USMN's counsel explained that had BioFire conferred with USMN prior to filing its Motion for Sanctions, BioFire would have learned the truth regarding communications between Mr. Caldwell and USMN's counsel. *See* Ex. 2 at ¶ 9, APP 14. USMN's counsel even offered to provide BioFire with contemporaneous notes and communications to evidence that Mr. Caldwell had submitted a false declaration to the Court. *See id.* at ¶ 11, APP 15. USMN has since provided BioFire with the contemporaneous notes disproving Mr. Caldwell's affidavit. But BioFire appears to have no interest in the truth.

USMN's counsel asked BioFire to withdraw its Motion for Sanctions, which is based on false testimony. *See* Ex. 2 at ¶ 9, APP 14. BioFire's counsel refused. *See id.*

## IV. ARGUMENTS AND AUTHORITIES

### A. Legal Standard.

Rule 11 requires that pleadings, written motions, and other papers filed with the Court be certified that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support[.]" FED. R. CIV. P. 11(b); *see Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989) (Under Rule 11, an attorney has a "nondelegable responsibility" to "personally . . . validate the truth and legal reasonableness of the papers filed[.]"). "An attorney has a duty to conduct a reasonable inquiry into the facts and law of a case at the time at which she affixes her signature on any papers to the court." *Brooks v. United Dev. Funding III, L.P.*, No. 4:20-cv-00150-O, 2020 WL 6132226, at *2 (N.D. Tex. May 27, 2020) (internal quotations omitted). The Court may impose appropriate sanctions against any attorney or party responsible for a violation of Rule 11. *Worrell v. Houston CAN! Academy*, 287 F. App'x 320, 325 (5th Cir. 2008); FED. R. CIV. P. 11(c)(1).

### B. BioFire Submitted the False Caldwell Declaration Without Reasonable Inquiry.

BioFire's Motion for Sanctions and the Caldwell Declaration contain numerous contentions that are demonstrably false. The false allegations detailed above are not just without evidentiary support; they are directly contradicted by both information USMN could have provided to BioFire if it had only asked, and by the very documents BioFire submitted in support of its Motion for Sanctions. It was objectively unreasonable for BioFire to file its Motion for Sanctions without conferring with USMN's counsel and without conducting a true investigation into the validity of the assertions contained in the Caldwell Declaration. Because BioFire lacked reasonable basis for its filing, sanctions are warranted.

BioFire's Motion for Sanctions and the Caldwell Declaration each contain numerous false contentions regarding statements USMN's counsel allegedly made or failed to make. For example, through the Caldwell Declaration, Mr. Caldwell claims he "explained [to USMN's counsel] that some of the conversations . . . were discussions that involved BioFire's counsel Meredith Krannich" and "[a]t no point did either Ms. Pettit or Mr. Hurst ask me not to review [sic] attorney client communications." (Caldwell Decl. ¶ 5). At best, BioFire and its counsel conducted only a sham investigation into the validity of these statements. And they continued to avoid the truth when they failed to confer with USMN regarding its Motion for Sanctions.[3] Had BioFire simply conferred with USMN or conducted a reasonable investigation prior to filing, it would have learned that USMN's counsel drafted the declaration "based [on] what [Mr. Caldwell] told [USMN's counsel];" that USMN's counsel "read the draft declaration to Mr. Caldwell—line by line;" that

[3] BioFire's sole attempt to confer on its Motion for Sanctions was a lengthy November 17, 2020, email on largely unrelated topics that concluded with: "Can you confirm that: 1) Prior to USMN, Mr. Pettit, Mr. McBride or opposing counsel's discussion with Mr. Caldwell, Mr. Caldwell was instructed not to reveal attorney-client privileged communications and he did not do so; and 2) opposing counsel did not reveal any confidential communications to anyone who has not already been designated under the Protective Order?" *See* Ex. 4, APP 109. At no time did BioFire even mention the possibility of filing a motion for sanctions.

USMN's counsel "explained to [Mr. Caldwell] that [USMN] wanted to make sure the declaration was correct and that it was in his words;" and that "Mr. Caldwell confirmed [] that everything included in the declaration was true and accurate." *See* Ex. 2 at ¶¶ 5-6, APP 13-14.

Moreover, despite its attempt to mislead this Court in its Certificate of Conference, BioFire failed to confer with USMN. But worse, BioFire did not even need to confer with USMN to determine that it had filed false statements, because statements contained in both filings are contradicted by the very documents BioFire filed in support of its Motion for Sanctions. For instance, BioFire's Motion for Sanctions states that USMN "knew that Mr. Caldwell refused to sign its self-serving declaration, saying the declaration 'was generally not true and did not reflect what we had discussed.'" (Dkt. No. 171 at 14 (quoting Caldwell Decl. ¶ 8)). As stated above, this contention is undermined by Mr. Caldwell's text messages informing USMN's counsel that he would not sign the draft declaration because he did not "want to be involved" with BioFire and "wanted to move on." (*See* Dkt. No. 172 at 191).

Similarly, BioFire's Motion for Sanctions repeatedly insinuates that USMN's counsel knowingly drafted an inaccurate declaration. (*See* Dkt. No. 171 at 14–16). And the Caldwell Declaration further claims that "at no point had Ms. Pettit or Mr. Hurst ever told me that they were going to prepare a declaration or would ask me to sign one." (Caldwell Decl. ¶ 6). But the very email from USMN's counsel sending Mr. Caldwell the draft declaration states, "***Attached is the declaration we just went over by phone. Please review it again and make sure everything is accurate***." (Dkt. No. 172 at 192) (emphasis added).

Had BioFire or its counsel undertaken *even minimal* "reasonable pre-filing investigation" into the false statements contained in its Motion for Sanctions and the Caldwell Declaration, it would have easily determined that the statements were false. *See Worrell*, 287 F. App'x at 325;

*Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006). However, BioFire merely conducted, at best, a sham investigation, seemingly doing no more than speaking with Mr. Caldwell and failing to undertake reasonable effort to verify his statements. BioFire and its counsel had ample time and opportunity to investigate the facts surrounding conversations between Mr. Caldwell and USMN's counsel. Their failure to do so is unjustifiable.

**C. Even After Presented With Evidence Contradicting the Caldwell Declaration, BioFire Refused to Withdraw It's Motion.**

After BioFire filed its Motion for Sanctions, USMN's counsel repeatedly informed BioFire's counsel that both the Motion for Sanctions and the Caldwell Declaration contained false information. USMN's counsel further provided contemporaneous notes that undermined allegations contained in the Caldwell Declaration. But BioFire's counsel is seemingly uninterested in gathering additional information. Instead, BioFire and its counsel continue to refuse BioFire's Motion for Sanctions.

On a December 15th conference call, USMN's counsel reiterated numerous inaccuracies contained in the Caldwell Declaration and BioFire's Motion for Sanctions. *See* Ex. 3 at ¶ 8, APP 62-63. During the call, USMN's counsel specified each of their conversations with Mr. Caldwell and explained that the Caldwell Declaration contained false testimony regarding Mr. Caldwell's interactions with USMN's counsel. *See id.*

Repeated attempts by USMN's counsel to provide additional information have fallen on deaf ears. BioFire's refusal to heed these warnings, even after filing its Motion for Sanctions and the Caldwell Declaration, further underscore BioFire's refusal to conduct any reasonable inquiry into the accuracy of its filings before the Court.

**D. Requested Relief.**

As a result of the foregoing conduct by BioFire and its counsel, USMN respectfully requests the following relief:

- An order striking or requiring BioFire to withdraw BioFire's Response to USMN's Motion for Leave to Reopen the Deposition of Curt Caldwell and BioFire's Motion for Sanctions (Dkt. No. 171), as well as the Appendix in support thereof that contains the Caldwell Declaration (Dkt. No. 172);

- An award of attorneys' fees and costs that USMN incurred in communicating with counsel for BioFire and responding to BioFire's Motion for Sanctions and in drafting this Motion; and

- An award of sanctions pursuant to Rule 11.

## V. CONCLUSION

For the foregoing reasons, USMN respectfully requests that this Court grant its Motion for Sanctions and award any additional relief it deems just and equitable.

Respectfully submitted,

*/s/ Julie Pettit*
Julie Pettit
State Bar No. 24065971
JPettit@PettitFirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com
Sara Hollan Chelette
State Bar No. 24046091
schelette@lynnllp.com
Yaman Desai
Texas Bar No. 24101695
ydesai@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF US MEDICAL NETWORKS, LLC**

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for USMN conferred with counsel for BioFire regarding this Motion, including by providing notice of the same, as required by Rule 11 of the Federal Rules of Civil Procedure

*/s/ Julie Pettit*
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on the following ***via ECF*** pursuant to the Federal Rules of Civil Procedure on January 13, 2021:

Robert W. Kantner
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
rwkantner@jonesday.com
ATTORNEYS FOR DEFENDANT
BIOFIRE DIAGNOSTICS, LLC

Kirsten E. Moran
JONES DAY
77 West Wacker
Chicago, Illinois 60601
kmoran@jonesday.com
ATTORNEYS FOR DEFENDANT
BIOFIRE DIAGNOSTICS, LLC

Aaron D. Charfoos
Adam Reich
PAUL HASTINGS
71 S. Wacker Dr.
44th Floor
Chicago, IL 60606
(312) 499-6016
aaroncharfoos@paulhastings.com
adamreich@paulhastings.com
ATTORNEYS FOR DEFENDANT
BIOFIRE DIAGNOSTICS, LLC

*/s/ Julie Pettit*
Julie Pettit